UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------
In re

      CRAWFORD FURNITURE MFG. CORP.,         11-12945 B


                        Debtor
--------------------------------------------------------
In re
      CRAWFORD FURNITURE RETAIL OUTLET, INC.,    11-12946 B


                        Debtor
--------------------------------------------------------

<u>DECISION & ORDER</u>

        Bond, Schoeneck & King, PLLC
        Joseph Zagraniczny, Esq., of counsel
        Camille W. Hill, Esq., of counsel
        One Lincoln Center
        Syracuse, New York 13202
        Attorneys for the Debtors

        Tracy Hope Davis
        United States Trustee, Region 2
        Joseph W. Allen, Esq.
        Assistant United States Trustee
        300 Pearl Street, Suite 401
        Buffalo, New York 14202

        Eric T. Schneiderman
        Attorney General of the State of New York
        Michael J. Russo
        Assistant Attorney General in Charge
        James M. Morrissey
        Assistant Attorney General
        350 Main Street, Suite 300A
        Buffalo, New York 14202

        Cohen Tauber Spievack & Wagner P.C.
        Andrew L. Buck, Esq., of counsel
        Robert A. Boghosian, Esq., of counsel
        420 Lexington Avenue, Suite 2400
        New York, New York 10170
        Attorneys for Planned Furniture Promotions, Inc.

Bucki, Chief U.S.B.J., W.D.N.Y.

Crawford Furniture Retail Outlet, Inc., seeks authority to enter into an agreement for the liquidation of inventory and to conduct a going-out-of business sale.  The central dispute involves the extent to which the proposed sale must comply with state law restrictions on transactions of this type.

On August 25, 2011, Crawford Furniture Mfg. Corp. ("Crawford Manufacturing") and Crawford Furniture Retail Outlet, Inc. ("Crawford Retail") each filed a petition for relief under Chapter 11 of the Bankruptcy Code.  Crawford Manufacturing is a closely held New York corporation that specializes in the manufacture of solid wood furniture.  Its affiliate, Crawford Retail, operates five retail stores for the sale of both wood furniture produced by Crawford Manufacturing and complementary furniture manufactured by other entities. Shortly after the commencement of these proceedings, at the request of the debtors, this court issued an order directing the joint administration of the cases.

On September 9, 2011, Crawford Retail filed the present motion seeking authority to conduct a going-out-of business sale.  However, in addition, Crawford Retail proposed to retain Highfill, Inc., to assist with the liquidation process.  Under the terms of their proposed agreement, Highfill would "provide sufficient additional furniture merchandise inventory of like kind and quality at each Store Location to be included in the Sale as needed to fill out the existing inventory to enhance the marketability of the inventory on hand or to replace damaged inventory."  The parties anticipated that the majority of sold merchandise would derive from consigned goods not owned by either of the debtors.  In addition to allocating proceeds between Crawford Retail and Highfill, the agreement established methodologies for the conduct of the sale, such as a requirement that Highfill conduct "an aggressive advertising program."

To facilitate the implementation of the proposed going-out-of-business sale, Crawford Retail sought a broad exemption from state and local laws and regulations that

would otherwise apply to a liquidation sale.  Thus, paragraph 44 of its motion stated the

following:

> "Accordingly, [Crawford Retail] respectfully requests that the Court authorize it to conduct the Sale and related transactions without the necessity of, and the delay associated with, obtaining various state and local licenses, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising and the like.  In addition, [Crawford Retail] requests that the Court waive any bulk sales laws, to the extent applicable, since creditors are protected by the notice provided by the Motion and the jurisdiction of the Court.  Finally, Retail requests that the Court enjoin any action by any federal, state or local agency, department or governmental authority or any other entity to prevent, interfere with, or otherwise hinder consummation of the Sale or advertisement of such sale."

The New York State Attorney General and the United States Trustee filed papers in

opposition to the motion.  In particular, they object to any preemption of governmental

regulatory powers, such as enforcement of limitations in the New York General Business

Law with regard to going-out-of business sales.  For example, General Business Law

§583(d)(12) prohibits generally the augmentation of pre-existing inventory, and General

Business Law §590(a) limits going-out-of business sales in New York to a maximum of sixty

days.  Crawford Retail responds that it does not seek to impair the enforcement of rules to

protect consumer health and safety, and that its proposed order will appropriately

maximize value for distribution to creditors.

The court heard argument on the motion to authorize a going-out-of-business sale

at a hearing on September 22, 2011.  After denying the request to approve the originally

proposed agreement, I allowed the parties to negotiate a modified arrangement that did

ultimately meet with approval.  Due to the exigencies of the debtor's circumstances and the

need to begin liquidation immediately, the court announced that it would sign an

appropriate authorizing order upon presentment, but would reserve the opportunity to

memorialize its reasoning.  We issue the present opinion to fulfill that purpose.

Discussion

As a general rule in Chapter 11, debtors in possession enjoy the rights and powers of a trustee.   11 U.S.C. §1107(a).   Accordingly, pursuant to 11 U.S.C. §1108 and §363(c)(1), Crawford Manufacturing and Crawford Retail may continue to operate their businesses in the ordinary course.   A going-out-of-business sale falls outside that parameter, however.   For this reason, such transactions are governed by 11 U.S.C. §363(b)(1), which directs that a trustee may use or sell estate property outside the ordinary course only "after notice and a hearing."   In the context of that hearing, we now consider whether Crawford Retail may conduct a going-out-of-business sale, and then if so, the extent to which this court must limit or condition the authorization for such a sale.

The Bankruptcy Code does not serve as an exclusive repository of laws governing the affairs of a debtor in possession.   In particular, the activities of a trustee or debtor in possession are also constrained by 28 U.S.C. §959(b), which states as follows:

> "Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

As a debtor in possession, Crawford Retail must still comply with state and local laws and regulations.   The present motion sought a waver of most of these restrictions.   Because such a broad waiver would have violated the mandate of 28 U.S.C. §959(b), this court denied the motion in its original form.   In addition, special concerns arise with regard to the statute that specifically governs the process for a going-out-of-business sale.

Article 29-F of the General Business Law codifies the rules for going-out-of-business sales in New York.   Pursuant to General Business Law §583(a), a merchant must secure a license prior to initiating such a sale.   The application must contain a "full, complete, detailed, and itemized inventory of the goods, wares, and merchandise to be offered at such sale."   General Business law §583(d)(9).   The applicant must further accept a number

of restrictions. For example, the merchant must agree not to sell goods acquired on consignment and it may not augment inventory during the course of the sale. General Business Law §583(d)(12) and (13). Outside the context of bankruptcy, therefore, state law would have prohibited Highfill and Crawford Retail from conducting the type of sale that they now propose. However, General Business Law §584(a) provides that the provisions of Article 29-F shall not apply to "Persons acting pursuant to an order or process of a court of competent jurisdiction." To the extent that debtors conduct a sale pursuant to an order of the Bankruptcy Court, they need not comply with the precise mandates of Article 29-F. Under state law, therefore, an order of this court can effectively waive the application of Article 29-F, without violating the requirements of 28 U.S.C. §959(b). That, however, does not end our discussion, which must now refocus on the appropriate exercise of discretion by this court.

If the going-out-of-business sale involved only a liquidation of property of the bankruptcy estate, then this court might have granted a broader license for strategies that aim to maximize a return for creditors. But when a debtor seeks to augment its inventory significantly with property that it does not acquire in the ordinary course, the arrangement threatens to become a ruse to avoid the restrictions of state law. In its original proposal, Crawford Retail sought authority for a sale of inventory that Highfill could augment with an unspecified amount of additional furniture. With no defined limit to the amount of such new inventory, Highfill could transform the debtor's going-out-of-business sale into a sale featuring mostly non-debtor merchandise, all without accountability for the consumer protection laws of New York State. Even though General Business Law §584 might allow such a sale if authorized by an order of this court, we should not use that authority unless the sale serves primarily to liquidate assets of the bankruptcy estate.

As originally presented, the motion to approve a going-out-of-business sale was denied, in part, because it would displace consumer protection laws with regard to an unspecified amount of furniture other than property of the bankruptcy estate. With the

court's urging, Crawford Retail then negotiated a more restrictive arrangement.  Both the New York State Attorney General and the Office of the United States Trustee have asserted no opposition to this new proposal, which the court will now approve for the reasons that follow.

At the hearing on its motion, Crawford Retail made an offer of proof that its existing mix of inventory was inadequate to maximize a return through liquidation.  The retail outlets were designed primarily to market the wood furniture that Crawford Manufacturing produces.  Counsel argued, however, that consumers often look to purchase Crawford's wood furniture in combination with other items.  For example, buyers might not want to purchase a bed frame without a mattress.  At the hearing, a competitor testified in opposition to the debtor's original sale proposal.  That witness acknowledged, however, that to maximize the proceeds of liquidation, the debtor needed to offer an attractive combination of merchandise.  Overall, the proof established a need for some augmentation of inventory.  That limited need would not support the original request for unrestricted authority to sell consigned furniture, but it could justify a reasonable supplementation.

In the revised proposal, Crawford Retail and Highfill accepted meaningful limitations on the augmentation of inventory.  Quantitatively, Crawford Retail agreed that it would supplement its existing inventory with "upholstered and bedding inventory" having a retail value not greater than $3,000,000, in addition to inventory from Crawford Manufacturing. Qualitatively, the parties adopted restrictions that would insure the marketing of merchandise similar to what Crawford Retail had offered for sale prior to its bankruptcy filing.  For example, the parties agreed to maintain the prior practice of offering only merchandise that was domestically produced.  Because Crawford Retail had not previously sold carpeting or wood veneer products, it would not begin the sale of such items during its liquidation sale.  Highfill promised, in the first instance, to approach the debtor's current vendors when placing orders for additional consigned inventory.

Pursuant to 28 U.S.C. §959(b), the debtors must operate in conformity with state law. Although section 584 of the New York General Business Law allows this court to exercise broad discretion to waive state restrictions on going-out-of-business sales, we must always exercise that discretion reasonably and through careful accommodation of the goals and purposes of the statute. Authority to exercise discretion must never create a license to subvert state law. Rather, this court must balance competing concerns: on the one hand, the goal of bankruptcy to maximize a recovery of value for creditors, and on the other hand, the desire of the state to protect the consuming public.

The debtors might well generate substantial income if given the opportunity to override every restriction with regard to going-out-of-business sales. Such subversion goes too far, however. In balancing the respective goals of both state law and the bankruptcy process, we aim not to overreach, but reasonably to protect core objectives. When a debtor assumes a liquidating mode, the core bankruptcy objective is to maximize the recovery of value from estate assets. A debtor exceeds this objective when it adopts strategies that are primarily designed to liquidate other property under the guise of a bankruptcy sale. Although New York law may allow this court to exempt debtors from restrictions applicable to a going-out-of-business sale, we will exercise that authority only when the proposed sale is reasonably designed to fulfill the legitimate goal of liquidating estate property. Even then, the sale should never violate the underlying intent of state law with regard to consumer protection.

In the context of New York law, a bankruptcy court must resolve at least four critical issues when considering an application for authority to conduct a going-out-of-business sale. First, is the proposal designed primarily to market estate property and not as a subterfuge to evade state laws regarding the sale of unrelated merchandise? In the present instance, the debtors could appropriately sell pre-petition inventory as well as new merchandise that Crawford Manufacturing might itself produce. This court rejected the debtor's initial proposal in part because it also contemplated an unlimited augmentation of

inventory from outside manufacturers. In its revised form, however, the going-out-of-business sale appropriately limits such non-Crawford merchandise to complementary items of a quantity that is reasonably needed to facilitate the sale of estate assets.

Second, does the proposal satisfy the requirements of 28 U.S.C. §959(b), to the effect that the sale will comply with "the requirements of the valid laws of the State in which the property is situated?" New York law allows a merchant to conduct a going-out-of-business sale "pursuant to an order or process of a court of competent jurisdiction." General Business Law §584(a). But aside from requirements of the General Business Law, the debtors must satisfy the requirements of all other applicable state laws. We rejected the debtors' initial proposal in part because it attempted too broadly to disregard these restrictions. With regard to their revised proposal, however, the parties agreed to the form of an order directing that they "continue to be bound by and comply with the state and local public health and safety laws . . . and tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising."

Third, with respect to those restrictions for which state law allows a waiver, will the waiver accrue a benefit to the estate that outweighs any compromise of protection to the consuming public? For example, in the present instance, Crawford Retail demonstrated that it would enhance the recovery of asset value if it could extend its going-out-of-business sale through the holiday season. Because the debtor had agreed to adopt a variety of disclosure and other procedures to protect the interests of prospective customers, the court found that those customers would derive comparatively minimal benefit from a strict limitation of the length of the proposed sale. Accordingly, we allowed a waiver of the provisions of General Business Law §590(a), that would have limited the sale to a duration of no more than sixty days.

Fourth, do the parties propose transparent procedures that are reasonably designed not to mislead purchasers, creditors and other interested parties?  Bankruptcy is an inherently open process that commands full disclosure of all materially relevant facts.[1]  In the present instance, the going-out-of-business sale will include both estate assets and a limited amount of consigned merchandise.  For this reason, in their promotion and advertising, the debtors may not mislead potential customers into believing that they are necessarily purchasing the discounted assets of a bankruptcy estate.  As now revised, the going-out-of-business sale should minimize the risk of such misconception.  The parties have agreed not to use the words "liquidation" or "bankruptcy" in any of their advertise- ments.  Within the stores, Highfill will affix a different color tag to consigned inventory and to inventory of the debtors.  It will further post signs disclosing these different sources of merchandise.  Finally, to maintain the legitimacy of representations regarding discounted prices, the parties agreed not to raise prices prior to the commencement of the going-out- of-business sale.

Conclusion

For the reasons stated herein, this court has granted the motion for authorization to conduct a going-out-of-business sale, but only on the terms and conditions incorporated into the revised agreement between the parties and into the order approving that agreement as previously entered in this proceeding.  Parties should rely upon this written opinion solely as a description of the court's reasoning and not as a restatement or modification of any prior order.

So ordered.

Dated:      Buffalo, New York           /s/        CARL L. BUCKI                 
            December 5, 2011       Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

---

[1]The concept of transparency is manifest throughout the Bankruptcy Code.  For example, a trustee may avoid a sale when the price is controlled by a collusive agreement among bidders.  11 U.S.C. § 363(f).  Similarly, in soliciting acceptance of a plan of reorganization in Chapter 11, a proponent must provide "adequate information," that is, "information of a kind and in sufficient detail, as far as reasonably practicable . . . that would enable [a hypothetical investor ]. . .  to make an informed judgment . . ." 11 U.S.C. § 1125(a).